IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
February 19, 2019 Session

## STEVEN WILLIAMS[1] v. GATEWAY MEDICAL CENTER, ET AL.

**Appeal from the Circuit Court for Montgomery County**
**No. CC16CV2392      Ross H. Hicks, Judge**

_____

**No. M2018-00939-COA-R3-CV**

_____

In this health care liability action, the trial court dismissed the plaintiff's claims for failure to substantially comply with the requirements of Tenn. Code Ann. § 29-26-121(a)(2)(E) upon determining that the plaintiff's pre-suit notice failed to include a HIPAA-compliant medical records authorization. The trial court found that the medical records authorizations provided by the plaintiff failed to include a "[d]escription of information to be used or disclosed" and an expiration date. The trial court further determined that these deficiencies prejudiced the defendants from mounting a defense because they were unable to obtain the relevant medical records. As a result, the plaintiff's claims were dismissed without prejudice. The plaintiff timely appealed. We consider the plaintiff's omission of an expiration date insignificant. The HIPAA form provided by the plaintiff failed to substantially comply with the statute because it did not include a description of the information to be used or disclosed, thereby causing prejudice to the defendants. We, therefore, affirm the trial court's dismissal of the plaintiff's claims.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded**

ANDY D. BENNETT, J., delivered the opinion of the court, in which THOMAS R. FRIERSON, II, and RICHARD H. DINKINS, JJ., filed separate opinions concurring in part and dissenting in part.

Marvin B. Berke, Chattanooga, Tennessee, for the appellant, Steven Williams.

_____

[1] Although the complaint heading lists "Steven Williams, individually and as next of kin for the wrongful death beneficiaries of Melissa L. Johnson Williams, deceased" as the "plaintiff," no other beneficiaries are named within the appellate record or appear to be participating in this appeal. Therefore, for simplicity, we will refer to Mr. Williams throughout this opinion as the plaintiff/appellant.

Dixie W. Cooper and Kim J. Kinsler, Nashville, Tennessee, for the appellees, Clarksville OB/GYN Associates, P.C., and Jennifer Harris Johnston, M.D.

**OPINION**

I. FACTUAL AND PROCEDURAL BACKGROUND[2]

On September 4, 2015, Melissa Williams was admitted to Gateway Medical Center for the purpose of having a hysterectomy performed by Dr. Jennifer Harris Johnston. Following the operation, Ms. Williams developed a deep vein thrombosis; she died on September 8, 2015. Steven Williams, Ms. Williams's husband, filed a health care liability action in the Circuit Court of Montgomery County on November 4, 2016. Mr. Williams's complaint alleged that Dr. Johnston and Gateway Medical Center failed to prescribe or administer anticoagulant medications to Ms. Williams, which was a violation of the standard of care due to Ms. Williams's history of diabetes, and made her susceptible to post-surgical blood clots.[3] Mr. Williams alleged that this violation of the standard of care caused his wife's death.

Mr. Williams provided the defendants with the pre-suit notice required by Tenn. Code Ann. § 29-26-121 on August 24, 2016. The pre-suit notice included HIPAA authorizations, but these authorizations failed to include "a description of information to be used or disclosed" and an expiration date. 45 C.F.R. § 164.508(c)(1)(i), (v). On December 19, 2016, Clarksville Health System, GP (formerly Gateway Medical) ("the Hospital") filed an answer, denying that Dr. Johnston was an employee. The Hospital further denied any departure from the applicable standard of care by its staff in the care of Ms. Williams.

On January 9, 2017, Dr. Johnston and Clarksville OB/GYN Associates, P.C. ("Clarksville OB/GYN"), filed a motion to dismiss, pursuant to Tenn. R. Civ. P. 12, asserting that the medical authorizations accompanying the pre-suit notice were deficient. In their motion, Dr. Johnston and Clarksville OB/GYN outlined that the medical authorizations provided by Mr. Williams had failed to include a "description of the information to be used or disclosed" or an expiration date. As a result of these missing components, Dr. Johnston and Clarksville OB/GYN asserted, they were unable to obtain Ms. Williams's medical records from the Hospital because Dr. Johnston was not an

---

[2] The authoring judge acknowledges and appreciates Judge Frierson's contributions to this opinion.

[3] Although the complaint named other medical defendants, those defendants filed answers denying that they provided any care to Ms. Williams. The claims against those defendants were subsequently nonsuited by Mr. Williams. The only defendants participating in this appeal are Clarksville OB/GYN Associates, P.C., and Jennifer Harris Johnston, M.D.

employee of the Hospital and had no access to its records. The Hospital also filed a motion to dismiss on February 8, 2017.

After hearing oral arguments concerning the motions to dismiss, the trial court entered an order on February 28, 2017, determining that the motions to dismiss would be held in abeyance due to the pendency of a Tennessee Supreme Court case with the potential to be dispositive of the motions. Ultimately, the case was not dispositive, and Dr. Johnston and Clarksville OB/GYN filed a renewed motion to dismiss on January 29, 2018.

On March 23, 2018, the trial court entered an order in which it concluded that Mr. Williams's pre-suit notice failed to include a HIPAA-compliant medical records authorization and therefore failed to substantially comply with Tenn. Code Ann. § 29-26-121(a)(2)(E). Because the authorizations failed to include a "description of information to be used or disclosed" or an expiration date, the court determined that Dr. Johnston was prejudiced because she was unable to obtain the relevant medical records from the Hospital to mount a defense. As a result, the court dismissed without prejudice the claims against Dr. Johnston.

On April 16, 2018, Mr. Williams filed a motion pursuant to Tenn. R. Civ. P. 59. In this motion, Mr. Williams argued that the medical records authorizations provided to the defendants were sufficient and that there had been no demonstration that Dr. Johnston and Clarksville OB/GYN could not obtain the relevant records. Mr. Williams asserted, *inter alia*, that the records "were all stored in one place and were together at the hospital and were accessible to both Defendants." Mr. Williams further asserted that Dr. Johnston and Clarksville OB/GYN "were instructed to fill out the balance of the HIPAA release, but did not do so." Mr. Williams subsequently filed a notice of voluntary nonsuit regarding his claims against all defendants except Dr. Johnston and Clarksville OB/GYN.

On May 7, 2018, the trial court entered an order denying Mr. Williams's Rule 59 motion. Finding that the plaintiff merely sought to relitigate matters that had already been adjudicated, the court reaffirmed the dismissal of all claims against Dr. Johnston and Clarksville OB/GYN. Mr. Williams timely appealed.

II. ISSUES PRESENTED

Mr. Williams presents the following issues for review:

1.      Whether the trial court erred by determining that the medical records authorizations were not substantially compliant with HIPAA regulations and Tenn. Code Ann. § 29-26-121(a)(2)(E) when the only alleged deficiencies were the failure to include an expiration date and a description of relevant records.

- 3 -

2. Whether a HIPAA-compliant medical authorization is necessary, pursuant to Tenn. Code Ann. § 29-26-121(a)(2)(E), when both defendants received notice and contributed to the sole medical record.

3. Whether the trial court erred by denying Mr. Williams's Tenn. R. Civ. P. 59 motion.

III. STANDARD OF REVIEW

Our Supreme Court has provided the following guidance regarding the standard of review applicable to a motion to dismiss a health care liability action based upon a plaintiff's alleged noncompliance with Tenn. Code Ann. § 29-26-121:

The proper way for a defendant to challenge a complaint's compliance with Tennessee Code Annotated section 29-26-121 and Tennessee Code Annotated section 29-26-122 is to file a Tennessee Rule of Procedure 12.02 motion to dismiss. In the motion, the defendant should state how the plaintiff has failed to comply with the statutory requirements by referencing specific omissions in the complaint and/or by submitting affidavits or other proof. Once the defendant makes a properly supported motion under this rule, the burden shifts to the plaintiff to show either that it complied with the statutes or that it had extraordinary cause for failing to do so. Based on the complaint and any other relevant evidence submitted by the parties, the trial court must determine whether the plaintiff has complied with the statutes. If the trial court determines that the plaintiff has not complied with the statutes, then the trial court may consider whether the plaintiff has demonstrated extraordinary cause for its noncompliance. If the defendant prevails and the complaint is dismissed, the plaintiff is entitled to an appeal of right under Tennessee Rule of Appellate Procedure 3 using the standards of review in Tennessee Rule of Appellate Procedure 13. If the plaintiff prevails, the defendant may pursue an interlocutory appeal under either Tennessee Rule of Appellate Procedure 9 or 10 using the same standards.

* * *

The leading rule governing our construction of any statute is to ascertain and give effect to the legislature's intent. *Walker v. Sunrise Pontiac-GMC Truck, Inc.,* 249 S.W.3d 301, 309 (Tenn. 2008). To that end, we start with an examination of the statute's language, *Curtis v. G.E. Capital Modular Space,* 155 S.W.3d 877, 881 (Tenn. 2005), presuming that the legislature intended that each word be given full effect. *Lanier v. Rains,* 229 S.W.3d

656, 661 (Tenn. 2007). When the import of a statute is unambiguous, we discern legislative intent "from the natural and ordinary meaning of the statutory language within the context of the entire statute without any forced or subtle construction that would extend or limit the statute's meaning." *State v. Flemming,* 19 S.W.3d 195, 197 (Tenn. 2000); *see also In re Adoption of A.M.H.,* 215 S.W.3d 793, 808 (Tenn. 2007) ("Where the statutory language is not ambiguous . . . the plain and ordinary meaning of the statute must be given effect.") (citing *Calaway ex rel. Calaway v. Schucker,* 193 S.W.3d 509, 516 (Tenn. 2005)). The construction of a statute is also a question of law which we review de novo without any presumption of correctness. *Lind* [*v. Beaman Dodge, Inc.*], 356 S.W.3d [889,] 895 [(Tenn. 2011)].

*Myers v. AMISUB (SFH), Inc.*, 382 S.W.3d 300, 307-08 (Tenn. 2012).

In *Arden v. Kozawa*, 466 S.W.3d 758, 763 (Tenn. 2015), our Supreme Court clarified:

> The content and affidavit requirements of Tennessee Code Annotated sections 29-26-121(a)(2), (a)(3), and (a)(4) are not mandatory, but directory, and can be achieved through substantial compliance. *See Thurmond v. Mid-Cumberland Infectious Disease Consultants, PLC,* 433 S.W.3d 512, 520 (Tenn. 2014) (allowing substantial compliance with the affidavit requirement under Tennessee Code Annotated sections 29-26-121(a)(3)(B) and (a)(4)); *Stevens ex rel. Stevens v. Hickman Comm. Health Care Servs., Inc.*, 418 S.W.3d 547, 555 (Tenn. 2013) (allowing substantial compliance with the HIPAA form requirement under Tennessee Code Annotated section 29-26-121(a)(2)(E)). "[U]nless strict compliance with a notice content requirement 'is essential to avoid prejudicing an opposing litigant,' substantial compliance with a content requirement will suffice." *Thurmond,* 433 S.W.3d at 520 (quoting *Stevens,* 418 S.W.3d at 555).

The Court has also explained that to determine whether a plaintiff has substantially complied with a statutory requirement, "a reviewing court should consider the extent and significance of the plaintiff's errors and omissions and whether the defendant was prejudiced by the plaintiff's noncompliance." *Stevens ex rel. Stevens v. Hickman Cmty. Health Care Servs., Inc.*, 418 S.W.3d 547, 556 (Tenn. 2013).

**ANALYSIS**

IV. STATUTORY REQUIREMENTS CONCERNING HIPAA-COMPLIANT MEDICAL AUTHORIZATION

Mr. Williams contends that the trial court erred in dismissing his claims based on his failure to substantially comply with Tenn. Code Ann. § 29-26-121(a)(2)(E). The medical records authorizations provided by Mr. Williams did not include a "description of information to be used or disclosed" or an expiration date. *See* 45 C.F.R. § 164.508(c)(1)(i), (v). Dr. Johnston and Clarksville OB/GYN (collectively, "Defendants") argue that the trial court properly dismissed the action because the medical authorizations provided by Mr. Williams were insufficient to allow Defendants to access relevant medical records to prepare a defense.

Tennessee Code Annotated section 29-26-121 (Supp. 2016) provides, in pertinent part:

(a)(1) Any person, or that person's authorized agent, asserting a potential claim for health care liability shall give written notice of the potential claim to each health care provider that will be a named defendant at least sixty (60) days before the filing of a complaint based upon health care liability in any court of this state.

(2) The notice shall include:

. . . .

(E) A HIPAA compliant medical authorization permitting the provider receiving the notice to obtain complete medical records from each other provider being sent a notice.

The trial court determined that Mr. Williams had failed to substantially comply with Tenn. Code Ann. § 29-26-121(a)(2)(E) because the medical records authorizations provided did not include a "description of information to be used or disclosed" or an expiration date. The court also determined that these deficiencies prejudiced Defendants from obtaining the relevant medical records from the Hospital so that they could mount a defense. On appeal, Mr. Williams asserts that the authorizations were substantially compliant because the only alleged deficiencies were the lack of an expiration date and description of the records to be disclosed. Mr. Williams argues that Defendants were able to "fill in the blanks" on the authorization forms in order to obtain the records they deemed necessary.[4]

---

[4] Despite Mr. Williams's assertion, the letter accompanying the medical release provided no further instruction concerning the release.

- 6 -

As our Supreme Court has explained:

> Tenn. Code Ann. § 29-26-121(a)(2)(E) serves to equip defendants with the actual means to evaluate the substantive merits of a plaintiff's claim by enabling early access to a plaintiff's medical records. Because HIPAA itself prohibits medical providers from using or disclosing a plaintiff's medical records without a fully compliant authorization form, it is a threshold requirement of the statute that the plaintiff's medical authorization must be sufficient to enable defendants to obtain and review a plaintiff's relevant medical records. *See* 45 C.F.R. § 164.508(a)(1) ("a covered entity may not use or disclose protected health information without an authorization that is valid under this section"). Tenn. Code Ann. § 29-26-121(d)(1) creates a statutory entitlement to the records governed by § 29-26-121(a)(2)(E). *See* Tenn. Code Ann. § 29-26-121(d)(1) ("All parties in an action covered by this section *shall be entitled to obtain complete copies of the claimant's medical records from any other provider receiving notice . . . .*") (emphasis added).

*Stevens*, 418 S.W.3d at 555. The Court referenced the following federal regulations establishing the six elements of a HIPAA-compliant authorization:

> Core elements. A valid authorization under this section must contain at least the following elements:
>
> (i) A description of the information to be used or disclosed that identifies the information in a specific and meaningful fashion.
>
> (ii) The name or other specific identification of the person(s), or class of persons, authorized to make the requested use or disclosure.
>
> (iii) The name or other specific identification of the person(s), or class of persons, to whom the covered entity may make the requested use or disclosure.
>
> (iv) A description of each purpose of the requested use or disclosure . . . .
>
> (v) An expiration date or an expiration event that relates to the individual or the purpose of the use or disclosure . . . .
>
> (vi) Signature of the individual and date. If the authorization is signed by a personal representative of the individual, a description of such representative's authority to act for the individual must also be provided.

45 C.F.R. § 164.508(c)(1) (quoted in *Stevens*, 418 S.W.3d at 555-56). We emphasize that, "[i]n determining whether a plaintiff has substantially complied with a statutory requirement, a reviewing court should consider the extent and significance of the plaintiff's errors and omissions and whether the defendant was prejudiced by the plaintiff's noncompliance." *Stevens*, 418 S.W.3d at 556. In *Stevens*, our Supreme Court determined that the "errors and omissions [in the medical authorization] were numerous and significant," such that the plaintiff had not substantially complied with the requirements of the statute. *Id*. Mr. Williams asserts that the omissions in this matter are not as significant.

A. Expiration date.

We begin by considering the significance of the omission of the HIPAA form's expiration date. There are a few relevant cases. In *Hamilton v. Abercrombie Radiological Consultants, Inc.*, 487 S.W.3d 114, 120 (Tenn. Ct. App. 2014), the only alleged error on the plaintiff's HIPAA form was the missing date required under C.F.R. § 164.508(c)(1)(vi), which requires a "[s]ignature of the individual and date." The plaintiff explained that this date line was left blank "as a courtesy" to the defendants so that the form would not "become stale." *Hamilton*, 487 S.W.3d at 120. The trial court granted the defendants' motion to dismiss based upon this omission on the HIPAA form. *Id*. at 116. On appeal, this court found no evidence that the defendants "were prejudiced or otherwise denied access to medical records as a result of the missing date." *Id*. at 122. Although we acknowledged that "it is not good practice to omit any of the C.F.R. criteria from a HIPAA form," we determined that "the relatively minor shortcoming in the HIPAA form here [was] not fatal" to the plaintiff's case. *Id*.

The result in *Hamilton* differs from that in *Buckman v. Mountain States Health Alliance*, No. E2017-01766-COA-R3-CV, 2018 WL 3608416, at *1 (Tenn. Ct. App. July 26, 2018), a case in which the HIPAA authorization form provided by the plaintiff included an expiration date that had already passed. This court affirmed the decision of the trial court dismissing the plaintiff's complaint for failure to substantially comply with the statute. *Buckman*, 2018 WL 3608416, at *8. The defendants were prejudiced because they could not legally obtain medical records with an invalid (expired) HIPAA release form. *Id*. at *6-7.

The facts in the present case are similar to those in *Hamilton*. There has been no showing that Defendants were prejudiced by Mr. Williams's omission of an expiration date. Counsel for Dr. Johnston acknowledged that this omission was "not an extremely significant oversight." Her further statement that, if this were the only issue, the case probably would not be in court, indicates a lack of prejudice. We conclude that Mr. Williams's omission of an expiration date was insignificant and did not prevent the HIPAA form from being substantially compliant with Tenn. Code Ann. § 29-26-121(a)(2)(E).

B. Description of records.

The pertinent portion of the medical records authorization form sent by Mr. Williams is entitled, "Description of information to be used or disclosed." Underneath this heading, the form asks: "Is this a request for psychotherapy notes?" If the answer to this question is "Yes," the instructions state that "[y]ou must submit another authorization for other items below." If the answer is "No, then you may check as many items below as you need." Following these preliminary questions is a listing of types of medical records with boxes to check and dates of the records for each type of medical record requested. The first item in the list is "All PHI [Protected Health Information] in medical record." The remainder of the list describes more specific records. On the HIPAA authorization forms sent by Mr. Williams to Defendants, no check marks appeared in this section.

Mr. Williams argues that the authorizations were sufficient because Defendants could "check however many records or what type of records the Defendant wants to obtain" and that "Defendant was entitled to check any box the Defendant wanted." This court has previously held, however, that it is not the burden of medical defendants to "assist" a plaintiff in achieving compliance with Tenn. Code Ann. § 29-26-121(a)(2)(E) or to "test" a deficient authorization to ascertain whether records can be obtained. *See J.A.C. by and through Carter v. Methodist Healthcare Memphis Hosps.*, 542 S.W.3d 502, 514 (Tenn. Ct. App. 2016). As the *J.A.C.* court explained:

> Several Tennessee decisions have rejected the proposition that a health care liability defendant has a duty to assist a plaintiff [to] achieve compliance or to test whether an obviously deficient HIPAA form would allow the release of records. *See, e.g.*, *Stevens*, 418 S.W.3d at 559 ("Plaintiff—not Defendants—was responsible for complying with the requirements of Tenn. Code Ann. § 29-26-121(a)(2)(E)."); *Dolman v. Donovan*, No. W2015-00392-COA-R3-CV, 2015 WL 9315565, at *5 (Tenn. Ct. App. Dec. 23, 2015) (rejecting the plaintiffs' argument that the medical providers could not have been prejudiced because they never attempted to obtain medical records with the deficient medical authorization provided), *perm. app. denied* (Tenn. May 6, 2016). Similarly, our courts have rejected the notion that a health care liability defendant needs to inform a plaintiff that the provided authorization form is deficient before filing a motion to dismiss. *Stevens*, 418 S.W.3d at 559; *Vaughn v. Mountain States Health Alliance*, No. E2012-01042-COA-R3-CV, 2013 WL 817032, at *4 (Tenn. Ct. App. Mar. 5, 2013) (rejecting the argument that the defendants should have contacted plaintiff's counsel prior to an action being filed against them in order to inform plaintiff's counsel that the requirements of Tennessee Code Annotated section 29-26-121 had not been met), *overruled on other grounds by Davis v. Ibach*, 465 S.W.3d 570 (Tenn. 2015).

The argument that a health care liability defendant should complete or "customize" a medical authorization that contains blanks has been specifically rejected by two recent decisions of this Court. In *Roberts v. Prill*, No. E2013-02202-COA-R3-CV, 2014 WL 2921930 (Tenn. Ct. App. June 26, 2014), the plaintiff admitted that she intentionally left portions of the HIPAA form blank and anticipated that the defendant medical providers would fill it in. *Id.* at *6. In summarizing the crux of the plaintiff's argument as to why her complaint should not be dismissed despite the presence of an incomplete form, we noted as follows: "She essentially argues that the onus should be placed on Defendants to test the sufficiency of the form or even to complete an inadequate form." *Id.* We rejected the plaintiff's argument and noted as we had in *Stevens* that it is the health care liability plaintiff, not defendant, that is responsible for complying with the requirements of Tennessee Code Annotated section 29-26-121(a)(2)(E). *Id.* (citation omitted).

*Id.* at 514-15.

Similarly, in *Roberts v. Wellmont Health Sys.*, No. E2017-00845-COA-R9-CV, 2018 WL 3302178, at *1 (Tenn. Ct. App. July 5, 2018), the plaintiff provided a medical authorization that contained blanks to be filled out by the defendants in accordance with a purported local custom in the second judicial district. The trial court relied upon and took judicial notice of this custom in denying the defendants' motion to dismiss for lack of substantial compliance with the statute. *Roberts*, 2018 WL 3302178, at *1. On interlocutory appeal, this court reversed the trial court's decision and dismissed the plaintiff's complaint with prejudice. *Id.* at *6. In so doing, this court stated:

We next consider whether a third party is permitted to alter or modify a medical authorization after it has been executed by a patient or patient's authorized representative. The trial court, in its order denying defendants' motions to dismiss, rejected defendants' position that it would be improper for a medical provider or medical provider's counsel to alter a medical authorization after it is received from a patient, and litigation is not yet pending. The trial court stated that:

the Court finds there is no prejudice demonstrated by failing to fill out the forms with the names, and it is ridiculous to use technicalities of this nature to terminate a potentially meritorious case, which is contrary to the constitution of the State of Tennessee.

"Defective authorizations" are defined in 45 C.F.R. § 164.508(b)(2). An authorization is not valid if, among other things, it "has not been filled out

- 10 -

completely, with respect to an element described by paragraph (c) of this section." *See* 45 C.F.R. § 164.508(b)(2). Defendants argue that the implication of defining an incomplete authorization as defective is that an individual is not permitted to fill-in blanks on a medical authorization after it has been presented partially completed by a patient or a patient's representative. We agree with the defendants.

*Id.* at \*5.

We concur with the precedent from the eastern and western sections of this court and conclude that Mr. Williams's failure to check the requested medical records makes the HIPAA authorization fall short of the standard of substantial compliance with Tenn. Code Ann. § 29-26-121(a)(2)(E).[5]

## V. NECESSITY OF HIPAA-COMPLIANT MEDICAL AUTHORIZATION

Mr. Williams asserts that a HIPAA-compliant medical authorization was unnecessary in this matter because there was only one medical record to which both Dr. Johnston and the Hospital contributed. Mr. Williams posits that the case at bar is thus factually similar to *Hughes v. Henry County Medical Center*, No. W2014-01973-COA-R3-CV, 2015 WL 3562733, at \*5 (Tenn. Ct. App. June 9, 2015).

In *Hughes*, the plaintiffs provided a medical authorization that did not permit one health care provider, Henry County Medical Center ("HCMC"), to obtain the records of another health care provider, who was an individual physician. *Hughes*, 2015 WL 3562733, at \*1. The hospital filed a motion to dismiss, arguing that the medical authorization was insufficient. *Id.* The hospital admitted, however, that it had not been prejudiced thereby because the other defendant, Dr. Gold, only saw the patient at HCMC and had no medical records of his own. *Id.* at \*2. The *Hughes* court stated:

HCMC admittedly suffered no prejudice as a result of the medical authorization provided by Appellants. Furthermore, HCMC does not deny that they received timely pre-suit notice containing all of the items required

---

[5] The author of this majority opinion has concerns about this ruling, but acknowledges the precedent. The provision by a plaintiff to a defendant of a checklist form for medical records has much to commend it. The practice allows a defendant to choose the records it wants rather than having to sift through potentially years of irrelevant health records. If the defendant so chooses, it may check "All PHI in the medical record." That is hardly an imposition. Furthermore, encouraging some cooperation between or among parties is not a bad thing. Finally, the deficiencies in this case are easily curable. Yet, if mistakes are made, we allow a defendant to file a "gotcha" motion to dismiss without even trying to acquire the records, rather than having the parties work it out and try to resolve the case on its merits. The countless cases that have arisen under these statutes, with the many different factual permutations, reveal the confusing and mostly unforgiving nature of these laws.

by the statute. The purpose of the statute and the essence of the thing to be accomplished, i.e., pre-suit notice to the defendant, have both been satisfied in this case. Moreover, the goal of section 29-26-121(a)(2)(E) is to provide the means necessary to "evaluate the substantive merits of a plaintiff's claim by enabling early access to a plaintiff's medical records." Here, that goal was clearly satisfied because HCMC was authorized to use all of the patient's relevant medical records.

*Id*. at *5 (internal citations omitted).

In the instant action, the facts are distinguishable from those in *Hughes*. Dr. Johnston asserted in her motion that she was unable to obtain Ms. Williams's medical records that were in the possession of the Hospital. Both the Hospital and Dr. Johnston have denied that Dr. Johnston is an employee of the hospital. Taking as true Mr. Williams's allegation that the Hospital maintains sole possession of Ms. Williams's medical record, we have a factual situation much different than that in *Hughes*. It appears that, without a valid HIPAA authorization, neither defendant can access the necessary medical records. We, therefore, find Mr. Williams's argument that *Hughes* is controlling authority in this situation to be unavailing.

## VI. RULE 59 MOTION

Finally, Mr. Williams asserts that the trial court erred by denying his motion made pursuant to Tenn. R. Civ. P. 59 upon the court's finding that Mr. Williams was attempting to "relitigate matters that have already been adjudicated."

This court's scope of review with regard to the denial of a Rule 59 motion is to determine whether the trial court abused its discretion in denying the motion. *See Smith v. Haley*, No. E2000-001203-COA-R3-CV, 2001 WL 208515, at *5 (Tenn. Ct. App. Mar. 2, 2001). "A court abuses its discretion when it causes an injustice to the party challenging the decision by (1) applying an incorrect legal standard, (2) reaching an illogical or unreasonable decision, or (3) basing its decision on a clearly erroneous assessment of the evidence." *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010).

As the trial court's May 17, 2018 order explained in significant detail, the trial court had already considered and rejected each of the arguments raised by Mr. Williams's Rule 59 motion. With regard to the function of a Rule 59 motion, this court has previously explained:

The purpose of Tenn. R. Civ. P. 59 motions is to prevent unnecessary appeals by providing trial courts with an opportunity to correct errors before a judgment becomes final. Tenn. R. Civ. P. 59.04 motions

- 12 -

may be granted (1) when the controlling law changes before a judgment becomes final, (2) when previously unavailable evidence becomes available, or (3) when, for sui generis reasons, a judgment should be amended to correct a clear error of law or to prevent injustice. They should not, however, be granted if they are simply seeking to relitigate matters that have already been adjudicated.

*Bradley v. McLeod*, 984 S.W.2d 929, 933 (Tenn. Ct. App. 1998), *overruled in part on other grounds by Harris v. Chern,* 33 S.W.3d 741 (Tenn. 2000) (internal citations omitted).

As discussed previously in this opinion, we conclude that the trial court erred because Mr. Williams's omission of an expiration date did not prevent the HIPPA form from being substantially compliant with Tenn. Code Ann. Section 29-26-121(a)(2)(E). The trial court did not err in determining that the lack of description of the records failed to comply with the law.

## VII. CONCLUSION

For the foregoing reasons, we affirm the trial court's dismissal of Mr. Williams's claims against Dr. Johnston and Clarksville OB/GYN. We remand this matter to the trial court for collection of costs assessed below. Costs on appeal are taxed to the appellant, Steven Williams.

_____
ANDY D. BENNETT, JUDGE